# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SAMUEL GUZMÁN, et al., *individually and on behalf of all others similarly situated*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>*Defendants*. | No. 1:26-cv-3579-BAH |

**DECLARATION OF SAMUEL GUZMÁN**

I, SAMUEL GUZMÁN, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is Samuel Guzmán. I am a 24-year-old Latino man and a U.S. citizen.
2. I was born in Annapolis, Maryland. I have a U.S. passport, a REAL ID, and a Social Security number.
3. I moved to Mexico with my family when I was three years old, and I returned to the United States when I turned 13. I speak both Spanish and English, but because I lived in Mexico during my childhood, I speak English with an accent and prefer to speak in Spanish.
4. I graduated from high school in Annapolis in 2020. Today, I work as a prep cook at three different restaurants. I live with my mother and brother in Annapolis. My brother is a United States citizen, and my mother is a Lawful Permanent Resident.
5. On Sunday, June 7, 2026, at around 8:00 a.m., I went to the 7-Eleven at 1527 Forest Drive in Annapolis to buy coffee before work. On my way there, I passed a co-worker's

house and saw ICE arresting people right in front of his house. I called my co-worker to ask if he was alright. He said he was, but that he had just seen ICE arresting people who were on their way to church.

6. I was driving my Honda Civic, which I had recently purchased from a friend. I had not yet changed the registration, so the car was still registered under my friend's name.

7. I arrived at the 7-Eleven, parked, and went inside to buy my coffee. After I bought my coffee, I walked back to my car and opened the car door. At this point, four or five dark-colored SUVs with tinted windows suddenly entered the 7-Eleven parking lot and blocked the two exits. The SUVs did not have front license plates and had no markings.

8. About five or six ICE agents got out of the vehicles. They were wearing face coverings and vests that said "Police ICE," and they were carrying firearms.

9. One agent ran up to me and, in English, told me not to run. At first, I was confused, and I asked if he was talking to me. He then said yes, and he ordered me to put my hands up, so I did as he said. He shoved me against my car and took what was in my pockets: my phone, wallet, and car keys.

10. Another officer came up to me, so there were two surrounding me. I did not feel like I could walk away.

11. I saw one of the officers look at the contents of my wallet, including my driver's license. But right after they looked at it, they handcuffed me. They put me in their truck. I asked in English why I was being arrested, and I told them that I was an American citizen. But at that moment they ignored me. The agents did not ask for my name or explain why they were arresting me. They did not show a warrant for my arrest or say that they had one. I started to realize they were going to take me somewhere else.

12. They took me and three or four other people detained at the 7-Eleven to a parking lot a few minutes away, in front of a community center at 273 Hilltop Lane in Annapolis, Maryland. During the drive from the 7-Eleven to the other parking lot, I said again to the officers that I am a U.S. citizen. The officer who handcuffed me asked "if you are an American citizen, why don't you speak better English?" I told him that I had Mexican blood and lived in Mexico at one point, but was born in Annapolis.

13. When I got to the parking lot, it was completely occupied by ICE personnel and their vehicles. I counted at least twelve dark SUVs with dark tints. I recognized some of the people who were detained from my community and saw the people who had been arrested near my co-worker's house.

14. I was at this location for about an hour and a half. I was handcuffed the entire time. No one explained why I had been arrested or what was going to happen next. During that time, they took me out of the car and then put me back in without saying anything to me. At one point a female agent came by to ask the agent in the vehicle with me for bags to pack up people's things. It looked like they were processing all the people they had rounded up.

15. After about an hour, agents took me out of the car again and brought a Spanish-speaking agent to speak with me. My hands were still cuffed. One of the agents who had handcuffed me stood beside me while the Spanish-speaking agent spoke to me. He asked me questions about where I was from and what I was doing in the U.S. I told the agent that I am a U.S. citizen, I am from here, and I didn't know why I was being arrested. I asked to make a phone call, but the agents said no. They asked for my ID, and I told them to look at the documents in my wallet, which the officer who handcuffed me had taken

from my pocket. I had several identity documents in my wallet, including an old learner's permit, an old Maryland ID card, and my most recent driver's license, which is a REAL ID.

16. They looked at the documents in my wallet. After reviewing my documents, they put me back into the SUV and drove me back to the 7-Eleven parking lot where they had handcuffed me. They took me out of the vehicle, removed the handcuffs, got back into their car, and left me there. They did not explain why I had been arrested. They didn't speak to me at all after I told them to look at the documents in my wallet.

17. In total, I told the officers at least three times that I was a U.S. citizen before they finally let me go.

18. After my arrest, I went to work and told my co-workers what had happened. Some of my co-workers are Latino, and many are immigrants with different legal statuses. They were very scared and asked me many questions.

19. I later told my mother and brother and many of my friends about what happened. Recently, my mother and I went to the 7-Eleven where I was arrested, and I mentioned this was where it happened, and I noticed that she became quiet and pensive. The experience was extremely disturbing to my family, especially to my mother, who now worries that members of our family could be arrested at any time.

20. I felt scared and angry about what happened to me, but I am most bothered by the way that ICE treats my friends and coworkers who aren't U.S. citizens. I am also worried about something happening to my mother and brother, even though she has a green card and he is a citizen like me.

21. I know that I could be arrested again, especially because I must continue living my life and cannot change the way I live. I drive the same car, and I must take the same routes to and from my jobs.

22. When ICE arrested me, I felt like they were searching for people who looked Latino to detain. I tried to tell officers that I was a U.S. citizen, but they ignored me and arrested me anyway. Because of what happened and what I saw, I know that because of how I look and speak, even carrying ID proving my identity is not enough to protect me from another ICE arrest.

23. I understand that there are many other people who have experienced something similar to what I experienced. I am seeking to represent a class of people in Maryland who have been arrested by ICE without a warrant and without proper reasons.

24. If the Court recognizes this case as a class action, I understand the responsibilities involved in being a plaintiff representing a class. I understand that I need to keep informed about what is going on with the case, including any agreements between the plaintiffs and the government to resolve this case. I understand that I need to think about the interests of other proposed class members, who are people in a similar situation to me, and act on those interests. I am prepared to represent the proposed class in this case and will take my responsibilities seriously.

25. I understand that I will be part of a team making important legal decisions and directing the lawyers in this case after getting their advice. I will share what I think about these legal decisions and will be involved in the final approval of major legal decisions, including whether to settle this case with the government.

26. I will work with the other class representatives on this case to make decisions when issues come up about how to proceed.

27. I will communicate with and direct the lawyers representing the class about important motions, settlement talks, trial preparation, and trial. I understand that I am responsible to direct the lawyers on each of these things, after getting their advice. I will speak to the lawyers as often as necessary.

28. I understand that I may need to answer questions from the government's lawyers in writing or in person.

29. I understand that if a class is certified, my lawyers will owe a duty to all members of the proposed class to provide fair and adequate representation.

30. I believe that the Amica Center for Immigrant Rights, the ACLU of Maryland, the National Immigration Project, Cohen Milstein, and Crowell should be approved by the Court to serve as co-counsel for the class. I believe they will work to obtain the best result for the class.

31. This declaration was read to me in full in Spanish on September 3, 2026, by Luis A. Aleman. I completely understand the content of this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 3, 2026.

Signed by:
8D2B9A08AE058F5...
[Signature/Initials]

## CERTIFICATE OF INTERPRETATION

I, Luis A. Aleman, certify that I am fluent in Spanish and English and that I read this declaration in its entirety in Spanish to Samuel Guzman.

Luis A. Aleman

September 3, 2026